

NIGHT BOX
FILED

SEP 0 2 1997

CARLOS JUENKE
CLERK, USDC / SDFL / MIA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASON ENTERPRISES, INC., a Florida corporation, and RICHARD CASON, individually,

      Plaintiffs,

vs.

METROPOLITAN DADE COUNTY, MIAMI-DADE WATER & SEWER DEPT., VICTOR-MONZON AGUIRRE, Director, G.S.A. ANTHONY J. CLEMENTE, Director (MDWSD), DAVID RUIZ, Director of Procurement, GARY FABRIKANT, Asst. Dir. Procurement, JOHN DOES 1 through 10,

      Defendants.
_____/

CASE NO.: 95-2711-CIV-MARCUS

Magistrate Judge Bandstra

**VERIFIED SECOND AMENDED
COMPLAINT AND JURY DEMAND**

Respectfully submitted,

HORNSBY, SACHER, ZELMAN,
  STANTON, PAUL & BEILEY, P.A.
Counsel for Plaintiffs CASON
ENTERPRISES, INC.
and RICHARD CASON
1401 Brickell Avenue, Suite 700
Miami, Florida 33131
(305) 371-8797
(305) 374-2605 (fax)



CASE NO.:  95-2711-CIV-MARCUS

This is an action to redress the deprivation, under color of state law, of privileges, rights or immunities secured to the Plaintiffs by the 14th Amendment of the Constitution of the United States and Title 42 U.S.C. §§ 1981 and 1983, and to redress violations of state law, including breach of contract and tortious interference with contract. Jurisdiction is conferred on this Court by Title 28 U.S.C. §§ 1331 and 1343, and this Court's pendent jurisdiction to entertain Plaintiffs' state-based claims.

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343, and the Court's pendent jurisdiction to entertain Plaintiffs' state-based claims.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Defendants are subject to personal jurisdiction in this District and because all or a substantial portion of the events which give rise to this claim for relief arose in this District.

## THE PARTIES

3.     Plaintiff Cason Enterprises, Inc. ("CEI") is and at all material times was a Florida corporation with its principal place of business located at 1035 N.E. 125th Street, Suite 205, Miami, FL  33161.  CEI is a minority-owned, for-profit corporation wholly-owned by Plaintiff, Richard Cason, an African-American.

4.     Plaintiff Richard Cason ("Cason") is and at all material times was the sole shareholder of CEI and its President and Chief Executive Officer and, as a consequence

- 2 -

CASE NO.: 95-2711-CIV-MARCUS

thereof, was a third party beneficiary to the contract described hereinafter. Cason is an African-American businessman.

5. Defendant Metropolitan Dade County ("MDC" or the "County") is and at all material times was a County established pursuant to Article 8, Section 1 of the Constitution of the State of Florida. Defendant Miami Dade Water & Sewer Department ("MDWSD") is a department of MDC. References to MDC herein encompass references to MDWSD.

6. Defendant Victor Monzon- Aguirre ("Aguirre") at certain material times was the Director of General Services Administration ("GSA") for MDC. Aguirre resigned from the GSA on or about September 30, 1996. The GSA supervises, inter alia, county procurement.

7. Defendant Anthony J. Clemente ("Clemente") is and at all material times was the Director of MDWSD. Clemente is responsible for establishing MDWSD policies relating to its water and sewer programs.

8. Defendant David Ruiz ("Ruiz") is and at certain material times was the Director of Procurement for MDC. The Director of Procurement is directly responsible for formulating and executing County policy with respect to the quantity and timing of purchases made by the County. The County's published job description for the Director of Procurement states that the Director of Procurement:

is responsible for directing and supervising operations of the Procurement Management Division including centralized large scale procurement of a wide variety of commodities and services for county-wide use involving considerable expenditure of public funds. . . . Responsibilities include

- 3 -

CASE NO.: 95-2711-CIV-MARCUS

establishing or revising procurement policies and procedures and communicating with vendors regarding product quality, delivery terms and adherence to specifications as problems arise.

The description further provides that the "Director of Procurement is the only authority in the County [MDC] that can establish maximum dollar values and time limits for Informal Bid Awards. In the event that a County agency or department requires additional dollars and/or time for an existing contract, the County's Procurement Director shall approve these additions." Accordingly, the County has seen fit to give virtually unfettered, final policymaking power to the Director of Procurement in the areas of procurement. Further, the Director of Procurement exercises supervisory powers over employees of the procurement department.

9.     Defendant Gary Fabrikant ("Fabrikant") is and at certain material times was the Assistant Director of Procurement for MDC. Fabrikant also served as Acting Director of Procurement following the demotion of Hal Johnson and prior to the hiring of Ruiz. Fabrikant is sued herein only for actions while serving as Director of Procurement. Collectively Ruiz and Fabrikant, in his role as Acting Director of Procurement, shall be referred to as "Procurement Director." While serving as the Acting Director of Procurement, Fabrikant was involved in the decision-making process regarding the awards of contracts, including the one or more of those complained of herein.

10.     The Procurement Director is responsible for establishing final MDC policy with respect to all matters of procurement.

## OTHER PERSONS AND ENTITIES INVOLVED

- 4 -

CASE NO.: 95-2711-CIV-MARCUS

11.    Abelin ("Abe") Rodriguez is and at all material times was a CPPB Specifications Specialist for MDC.

12.    Greg Lane ("Lane"), is and at all material times was a Specialist for MDC.

13.    Carus Chemical Company ("Carus") is believed to be a corporation registered in Illinois and doing business in the State of Florida.   Carus is not, upon information and belief, a minority-owned business.

## BACKGROUND

### The GPP Contract

14.    On or about June 15, 1994, MDC issued an Invitation to Bid, #4545-1/97-OTR-CW (the "Bid Proposal"), for the supply of GRANULAR POTASSIUM PERMANGANATE ($KM_NO_4$) ("GPP").   The Invitation to Bid provided that the GPP was to be stored in a silo in a quantity per order of between 40,000 and 50,000 pounds and then to be mixed with water in a "make-up" tank with a high rate agitator to make up a 5% water solution.   The Bid Proposal also required that the successful vendor be capable of supplying a pre-mixed  5% $KM_nO_4$ water solution ("Liquid Solution").   The purpose of the Bid Proposal was to contract for delivery of GPP in "Bulk."   A copy of the Bid Proposal is attached hereto as Exhibit A.

15.    GPP is a substance utilized in waste-water treatment for the purpose, among others, of controlling unpleasant and toxic odors and irritants; in this instance the contract bid was specifically related to MDC's Central District Waste-Water Treatment

- 5 -

Plant (Virginia Key) for application to sludge drying beds for controlling odors during sludge turning operations.

16.     GPP is manufactured in two forms: solid and liquid. Solid or dry GPP is shipped in either bulk form or is shipped in drums. The only difference is in the amount of GPP being shipped and in the form of the shipping container. Liquid GPP is delivered in tanker trucks. Liquid GPP is perishable and is rarely manufactured in the United States making it much more expensive than solid GPP.

17.     The Bid Proposal covered a period of two years from July 1, 1994 through June 30, 1996, with an option for a one-year renewal.

18.     The Bid Proposal provided that the contract would be awarded to the lowest responsive responsible bidder.

19.     In preparation for submitting its bid, CEI entered into an agreement with its supplier, Chemical One Corporation, for the supply of an adequate amount of GPP as set forth in the Bid Proposal during the term of the contract. CEI also made arrangements with other suppliers for a Liquid Solution which was also part of the Bid Proposal.

20.     The Bid Proposal provided that it was estimated that delivery of 40,000 to 50,000 pounds of GPP would be required every sixty days. Upon information and belief, MDWSD uses between 40,000 and 50,000 pounds of granular GPP or 85,000 gallons of Liquid GPP every sixty (60) days. Further, upon information and belief, neither MDC nor MDWSD maintains a surplus of GPP in any form.

- 6 -

CASE NO.: 95-2711-CIV-MARCUS

21. CEI submitted a bid for 600,000 pounds of GPP at a price of $1.2499 per pound. CEI also offered an Option A to provide the Liquid Solution (5% $KM_NO_4$) at a price of $198.99 per gallon. A copy of CEI's bid is attached hereto as Exhibit B.

22. Upon information and belief CEI was the only minority bidder on the GPP Contract and MDC was aware of this fact.

23. MDC approved CEI as a qualified vendor. Prior to submitting its bid, CEI had been doing business with the County for several years and had never experienced any significant problems. Prior to his demotion, the Director of Procurement was Hal Johnson who was African-American. Coincidentally, CEI's problems with the County began when Fabrikant replaced Johnson as Acting Director of Procurement.

**The County's Racially Discriminatory Policy Towards Plaintiffs**

24. Notwithstanding the fact that CEI was the lowest responsive, responsible bidder, on August 19, 1994, in a letter from MDC to Plaintiffs, Plaintiffs were notified by Aguirre that the second-lowest bidder, Carus, a non-minority, was being recommended for the award of the referenced solicitation and contract. The decision to award the contract was motivated by racial animus towards CEI.

25. On August 25, 1994, Cason, on behalf of CEI, sent a letter to the Acting Director of Procurement, Fabrikant, protesting the "racist recommendation" for the award of the contract to Carus. Subsequently, on September 1, 1994, without addressing or controverting Cason's allegation of racism or offering any explanation of its initial improper recommendation of Carus, the County reversed its earlier decision, and issued

- 7 -

CASE NO.:  95-2711-CIV-MARCUS

a subsequent letter to Cason indicating that the County Manager would recommend that CEI be awarded the referenced solicitation.  Thereafter, CEI's bid protest dated August 28, 1994 was withdrawn.

26.    On November 2, 1994, MDC issued a blanket purchase order (the "PO") to CEI covering the period from November 1, 1994 through October 31, 1996 for the delivery of GPP.  The total amount of the order was $1,499,880.00.  A copy of the PO is attached as Exhibit C.

27.    Based on the contents of the Bid Proposal, CEI made arrangements with its supplier for delivery of orders in the minimum quantity specified of 40,000 to 50,000 pounds over sixty days.

28.    During the period of approximately the next six months, subsequent to the issuance of the PO, but for a single order of products in an amount far less than the minimum quantity as specified in the Bid Proposal, no orders for GPP or the liquid compound were made by MDC to CEI pursuant to the Bid Proposal contract.

29.    During this time, unbeknownst to the Plaintiffs, mechanical problems to the Silo, which was utilized by MDWSD for automatic batching and mixing of the GPP to make up the required 5% water solution for application to the sludge, made it impossible for MDC to utilize the GPP.  None of the Defendants notified the Plaintiffs of the mechanical problems to the machinery nor why no orders for the delivery of GPP were forthcoming; rather, each of them kept those details secret and offered untruthful explanations to Cason when he inquired why CEI was not receiving orders.

- 8 -

CASE NO.: 95-2711-CIV-MARCUS

30. The Bid Proposal contract provided that if required, MDC would purchase the Liquid Solution (5% $KM_NO_4$) from CEI. Because the machinery needed to batch and mix the GPP into liquid form was broken, the only form of the GPP that the County could use was the Liquid Solution.

31. In a letter from Thomas A. Tucker-Ronzetti, Assistant County Attorney, in response to a letter sent on behalf of CEI to MDC, among other things, Mr. Tucker-Ronzetti represented that the reason that no orders had yet been submitted by that time to CEI was that the County had not required the GPP that CEI supplies. He indicated that in light of this there had been no need for any orders in particular quantities. He also indicated that should the situation change, Cason would certainly be notified. There is no mention or comment in Mr. Tucker-Ronzetti's letter with regard to the mechanical difficulties being experienced by MDC, or that it was illegally violating CEI's contract by secretly purchasing GPP from an unauthorized third party.

32. Numerous communications ensued during this period between the Plaintiffs and, at times, several of the Defendants and their subordinates, during which at no time were the Plaintiffs notified of the mechanical difficulties which made use of the GPP impossible. Varying reasons were given why no orders were made. During one such discussion during the summer of 1995, outside the MDC building, while Cason was asking Fabrikant questions about the contract and the lack of orders for GPP, Fabrikant, in his official capacity dismissed Cason by calling him "Nigger" and stating that he "didn't have time to talk to him."

- 9 -

33.    As a direct consequence of the failure of MDC to make any orders during this period, CEI's, contract with its supplier was adversely impacted, as it was based upon the Bid Proposal and in anticipation that orders in quantities of 40,000 to 50,000 pounds of the GPP would be made on a monthly or bi-monthly basis.  As a direct result of the breach of that contract by MDC, CEI's suppliers increased their costs to CEI as it could not maintain the supplies required or the prices quoted in the subject Bid Proposal contract during a time when no orders were made.

### The End Run Around Plaintiffs

34.    Subsequently, some time during the latter part of April, 1995 and the beginning of May, 1995, Plaintiffs became aware of the mechanical difficulties.

35.    Because CEI was not receiving any orders of GPP which was adversely impacting its business, CEI, in good faith, negotiated with MDC for a discount from the bid price for the delivery of Liquid Solution (5% $KM_NO_4$), although MDC was acting in bad faith in that the Bid Proposal contract contained an agreed-to price, i.e., $198.99 per gallon and was refusing to make any orders.  In a further act of good faith, Plaintiffs proposed a repair solution to the machinery once they learned it was broken, but the County rejected it.

36.    During the initial six-month period of the Bid Proposal contract, MDC purchased GPP from Carus and/or its affiliates, unbeknownst to Plaintiffs.  In addition, MDC retained the services of Carus to repair or modify the subject equipment for the use of potassium permanganate in drum form.  At no time did MDC make any proposal to

- 10 -

CASE NO.: 95-2711-CIV-MARCUS

the Plaintiffs for modification of the equipment or for the supply of potassium permanganate in drums during this six-month period.

37. Consistent with the end run around Plaintiffs, the County invented a third form of GPP (drum forms) and excused its failure to place orders from CEI by the drum requirement. With this new "type" of GPP, the County erroneously asserted it could order from Carus without violating the Contract.

38. Following repeated pleas from Cason to Clemente to order GPP, on or about May 25, 1995, MDC ordered 10,000 gallons of the Liquid Solution and 10,500 pounds of the dry, free-flowing potassium permanganate in drums from CEI for a total price of $149,900.00. In addition, and motivated by its desire to wipe away its acts of discrimination against Plaintiffs and the ongoing breach of contract, MDC sent a letter to Cason which provided for the release of the County from any further obligations under the contract and liability upon the payment of the $149,900.00. Cason refused to sign the letter of release, but delivered the potassium permanganate as ordered (A copy of the letter is attached hereto also Exhibit D), in false anticipation of the continuation of the contract, pursuant to the terms thereunder and future orders, as promised. A forged copy of a signed letter of release was produced by MDC's attorney and, in fact, MDC's attorney stated that he anticipated Cason would claim that the letter was forged.

39. CEI fulfilled its obligation to deliver the GPP to the Virginia Key facility, although not without considerable and ultimately unsuccessful obstruction by MDC. In June 1995, Cason phoned Lane to notify him of the impending delivery of Liquid GPP

- 11 -

to Virginia Key. During a hostile phone conversation, Lane threatened not to accept delivery; ultimately Lane met the delivery truck and first refused to accept delivery. Meeting the truck at Virginia Key, Cason called Clemente who grudgingly forced Lane to relent. Thereafter, Lane had a MDWSD employee allegedly test the Liquid GPP and declare it unsatisfactory. After a consultant for CEI who was expert in chemical testing discussed the testing procedure with the MDWSD employee, he allegedly retested it. Lo and behold the product was found satisfactory and Lane had run out of excuses to prevent delivery. Due to the distance between the office and the delivery location, Lane offered Cason a ride in a County vehicle, when Cason politely declined, Lane retorted "I didn't want your black ass in the vehicle to begin with." Cason later reported this comment to Clemente. Upon information and belief, no apparent action was taken against Lane by Clemente or anyone in the County.

40.     On or about August 9, 1995, Lane requested CEI to quote a price and delivery availability for liquid potassium permanganate and a sixty-day supply or approximately 85,000 gallons. CEI replied to Lane's request on August 9, 1995 providing that CEI would provide Liquid Solution at a price of $7.50 per gallon and that CEI could deliver within 48 to 72 hours. MDC never followed through with the order.

41.     As a direct consequence of MDC's refusal to order GPP and/or Liquid Solution pursuant to the Bid Proposal contract from CEI, CEI lost its supplier of GPP and was forced to seek additional supplies of GPP. It approached Carus, the second-lowest bidder, for supply of GPP, but Carus refused to honor the supply notwithstanding that

- 12 -

on at least one previous occasion, through its distributor Ashland Chemical, it had supplied GPP to the Plaintiff. During this time, it is believed that MDC had ordered and continued to order GPP from Carus as well as using technicians and equipment provided by Carus for the modification and/or correction of the mechanical difficulties being experienced by the County machinery. Carus knew that CEI had a direct Bid Proposal contract with MDC for the supply of GPP and Liquid Solution.

42. In August 1995, Clemente met with Cason in the County's offices, During the meeting, Cason again informed Clemente of Lane's racial slur and inquired if the County was going to order the Liquid GPP as it was obligated under the Contract and by Clemente's numerous promises. Clemente replied that no orders would be forthcoming. When Cason informed Clemente that he was considering litigation, Clemente -- in a foreshadowing of the coming boycott -- stated "If you file the goddamn lawsuit, I'm going to starve you out. Cancel your contract and see how long you last out here." Those words were prophetic.

43. Motivated by racial discrimination, all of the Defendants conspired to deprive the Plaintiffs of their constitutionally protected rights, including due process and to treat him unequally because of his race by, among other things:

(a) Initially awarding the Bid to a non-minority bidder, not to CEI who was the lowest responsive, responsible bidder;

- 13 -

CASE NO.: 95-2711-CIV-MARCUS

(b)    Failing to honor the Bid Proposal contract by not ordering either GPP or Liquid Solution for over six months after the bid was awarded, and/or not otherwise ordering it pursuant to the Bid Proposal Contract;

(c)    By dealing in bad faith with the Plaintiffs and compelling the Plaintiffs under duress to attempt to materially discount the accepted contract bid price of the Liquid Solution as a result of MDC's refusal to make any compliant order;

(d)    Failing to provide discipline or action regarding the racially discriminatory acts of county policymakers and employees;

(e)    Dismissing Cason and using racial slurs during the conduct of official County business;

(f)    By ordering from Carus, and possibly, other suppliers;

(g)    By arranging for the inability of the Plaintiffs to purchase GPP from other suppliers, including Carus;

(h)    By failing to disclose to the Plaintiffs the mechanical difficulties being experienced by the County; and

(i)    By leading Plaintiffs to believe that MDC would make orders of GPP and/or Liquid Solution when it had no intention of doing so and attempting to obtain a release from Plaintiffs for all claims in exchange for a nominal order.

44.    Based on information and belief, MDC continued to order dry potassium permanganate and, possibly, Liquid Solution from suppliers, including Carus, other than

- 14 -

the Plaintiff during this period in violation of their contractual obligation to purchase such supplies exclusively from the Plaintiff.

## Endorsement by the County of the Contrived Contract Termination

45.     On or about December 19, 1995, in continuation of its campaign of discrimination, in its efforts to ruin and destroy CEI's business, and its ability to comply with the terms and conditions of the Bid Proposal contract, MDC, knowing that the Plaintiffs by this time could not comply with the order, ordered 40,000 to 50,000 pounds of dry, free-flowing potassium permanganate (GPP) requiring delivery in 14 days. By this time, and as a direct consequence and result of the County's failure and refusal to order GPP and/or Liquid Solution pursuant to the conditions and terms and in breach of the Bid Proposal contract, and as was well-known to the County, CEI was unable to procure that amount of GPP at such short notice from its suppliers who had previously notified CEI of their increase in prices.

46.     MDC breached the Bid Proposal contract by refusing to order the Liquid Solution during the period of time, in excess of six months during which because of the inoperative machinery, it was unable to use the GPP.

47.     On January 10, 1996, MDC issued a false and contrived vendor-non-performance report, indicating that CEI had failed to deliver a truck-load of GPP within 14 days, in breach of Section 2.17 of the Bid Proposal.

48.     This action had been filed on December 5, 1995 and several of the named Defendants had, by that time, been served with process.

- 15 -

CASE NO.: 95-2711-CIV-MARCUS

**Retaliation and Boycott**

49.     Despite their racist treatment by the County and Defendants, Plaintiffs have continued to do business with the County. Plaintiffs have attempted to fulfill existing contracts with the County and have tried to secure new contracts from the County. Certain of the existing contracts predate the GPP Contract.

50.     The County, however, has continued enforcing its racist, retaliatory policies towards Plaintiffs and has effectively boycotted them because of their minority status.

51.     Plaintiffs was awarded and entered into over 30 contracts with the County since January 1, 1996. The amount of these contracts totals well over $1 million in the aggregate. However, the County, despite stating in each of the contracts what its predicted needs were for each of the goods called for in the contracts, has only ordered less than $100,000.00 worth of product over the course of two (2) years, less than 10% of the estimated County requests (the "No Order Contracts"). It is inconceivable that the County could be so negligent as to overestimate the amount of products required over this period by more than 90%. On information and belief other non-minority, successful bidders are not subject to the same amount of gross overestimations. Moreover, orders were only placed on a few of the No Order Contracts. On certain of these contracts, no orders ghave been placed. Prior to the demotion of Hal Johnson and Fabrikant/Ruiz's ascension, Plaintiffs did not encounter the gross overestimation of product need.

- 16 -

CASE NO.: 95-2711-CIV-MARCUS

52.    One contract for which Plaintiffs successfully bid was the contract known as Bid #1018-0/96-CW (the "1018 Contract"). The 1018 Contract required the delivery of certain chemical products to the Public Works Department. Plaintiffs fulfilled their requirements by delivering Surfac 910 which is a surfactant (chemical enhancer for weedkiller). Surfac 910 is the generic version of the brand name known as Induce; it meets or exceeds MDC's specifications under the 1018 Contract.

53.    On or about July 12, 1996, Plaintiffs delivered the Surfac 910 which was accepted by the Public Works Department. Despite their lack of complaint with the Surfac 910 and the absence of difference between Surfac 910 and Induce, MDC placed its next order to Plaintiffs but required them to deliver only Induce. In fact, Plaintiffs' delivery of Surfac 910 (which is sold at a lower price than Induce) was refused and Plaintiffs were forced to purchase Induce and deliver it to the Public Works Department.

54.    In February of 1997, nearly nine (9) months after the Surfac 910 was delivered to and accepted by the County in July, 1996, MDC's attorney, Tucker-Ronzetti, and Ruiz (along with Rodriguez) accused Plaintiffs of supplying defective product. MDC and Ruiz alleged that the containers of Surfac 910 which had been in MDC's exclusive control and possession for nine (9) months was exploding and/or leaking on the County's warehouse floor.

55.    Armed with baseless allegations, MDC forced Plaintiffs to retrieve the remainder of the Surfac 910, required Plaintiffs to pay for clean up costs and stated that no more orders of Surfac 910 were acceptable. This retaliatory conduct led to the

- 17 -

internal publication at Procurement of a County policy memo stating that generic products should not be used or accepted for delivery. The "Generic Product" memo was authored by Procurement and was a thinly-veiled racist attempt to drive Plaintiffs out of business.

56.     Plaintiffs were successful in bidding lowest for the new 1018 contract, known as 1018-2/99-OTRCW. Although the proposal called for additional items for which Plaintiffs submitted a bid, once Ruiz learned who was the lowest bidder, he withdrew at least four (4) items from the contract.

57.     Further, Rodriguez, upon information and belief from orders given by Ruiz, visited the Aviation Department of MDC and told key employees not to place orders from or do business with Plaintiffs. Rodriguez termed Plaintiffs a "backwoods" operation and slurred Cason by stating that he had "poor" managerial skills. Upon information and belief, Rodriguez made racially derogatory comments about Cason to Aviation Department employees. The retaliatory boycott continued.

58.     Both the Aviation Department and Fleet Management, with whom Plaintiffs had contracts, apparently heeded Procurement's retaliatory boycott, directives and policies. Despite estimates of large shipments of petroleum products, Sonar, Neemix and others, both Departments placed orders for a fraction of the estimated amounts. Either MDC's estimates upon which competing vendors rely were grossly overstated or MDC's departments were furthering the racist policies towards Plaintiffs by boycotting them. In fact, contract 1018-99-OTR-CW included a purchase order for $850,000.00

- 18 -

worth of supplies, yet MDC placed only allocated purchase orders for approximately $25,000 over the life of the contract.

59.    Further, employees within MDC and especially Procurement have upon information and belief been threatened, pressured and/or demoted based upon their relationship or perceived relationship with Cason.

60.    Since the filing of this lawsuit, MDWSD, apparently following Clemente's promise to starve Cason out, has only placed minuscule orders with CEI.

61.    The County's retaliatory actions are intentionally jeopardizing the continued viability of this minority enterprise.

62.    Plaintiffs' rights to enter into or enforce contracts have been denied and interfered with, depriving Plaintiffs of the same rights as are enjoyed by white citizens and owner-controlled corporations.

63.    The acts of the Procurement Directors, Clemente and Aguirre represent the official policy of MDC. Plaintiffs by and through their agents have continually informed both the MDC's County Manager and various County Commissioners of these racially discriminatory actions -- despite this knowledge, the County's policy of racial discrimination towards Plaintiffs continues. Further, MDWSD refused to place orders for the GPP creating its own policy of discrimination towards Plaintiffs and/or furthering MDC's official policy.

- 19 -

CASE NO.:  95-2711-CIV-MARCUS

64.    The deprivation by the Defendants of Plaintiffs' contract rights was the result of intentional and purposeful discrimination on the basis of race.  Plaintiffs suffered a deprivation of their rights due to an official policy of the County.

## FIRST CLAIM FOR RELIEF

65.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 64 herein.

66.    At all material times hereto, the Defendants were acting under color of state law, either directly, or indirectly, and/or conspiring with one another.

67.    The actions of the Defendants, set forth in the preceding statement of facts, maliciously, fraudulently and prematurely denied the Plaintiffs' rights to compensation under the contract without notice or any other procedural safeguards, and deprived the Plaintiffs of property without due process of law, and discriminated against Cason because of his race in violation of the 14th Amendment to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, the Constitution of the State of Florida and other applicable provisions of state and local law and regulations.

68.    The actions of MDC, MDWSD, Ruiz, Aguirre and Clemente (all final policymakers) caused subordinate MDC employees to violate Plaintiffs' constitutional rights and/or when notified of such acts ratified the discriminatory activities.

69.    Defendants have collectively engaged in a series of racially discriminatory actions against Plaintiffs thereby evidencing official MDC policy towards Plaintiffs, including illegal retaliation after the original Complaint herein was filed.

- 20 -

CASE NO.: 95-2711-CIV-MARCUS

70.     The actions of the Defendants, in denying Plaintiffs their right to compensation were arbitrary and capricious in violation of the laws of the State of Florida.

71.     By reason of the foregoing acts of the Defendants, CEI has been deprived of at least two years of compensation under the Bid Proposal contract amounting to approximately $47,000,000.00 for the amounts of GPP and Liquid Solution that but for the breach as set forth in the Bid Proposal and Cason has incurred related financial and psychological damages in an amount yet to be determined.

72.     Defendants have exhibited a malicious and wanton disregard for Plaintiffs' constitutional rights and in addition to the actual damages they have caused, Plaintiffs are entitled to recover punitive damages from them in an amount to be determined by the Court, sufficient to deter them and others from undertaking such conduct in the future.

## SECOND CLAIM FOR RELIEF

73.     Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 64 herein.

74.     Defendants made a secret and conspiratorial determination not to order from, or to supply GPP or liquid potassium permanganate to CEI, all in violation and breach of the Bid Proposal contract; and in continuing breach thereof, purchased GPP from third-party suppliers, including Carus, thereby denying Plaintiff its rights without notice, without hearing or without any other procedural safeguards.

- 21 -

75.    These actions violate the Bid Proposals, Metropolitan Dade County Ordinances and the Florida Constitution.  These actions were known by and condoned by County final policymakers.

76.    These actions deprived Plaintiffs of property without due process of law and discriminated against him on account of his race, in violation of the 14th Amendment, 42 U.S.C. §§ 1981 and 1983, and other applicable provisions of federal, state and local law.

77.    Defendants have exhibited a malicious and wanton disregard for Plaintiffs' constitutional rights and, in addition to the actual damages they have caused, Plaintiffs are entitled to recover punitive damages from them in an amount to be determined by the Court, sufficient to deter them and others from undertaking such conduct in the future.

## THIRD CLAIM FOR RELIEF

78.    Plaintiff repeats and realleges the allegations in Paragraphs 1 through 64 herein.

79.    Plaintiff has been denied all of the aforementioned rights by the named Defendants who are employees of MDC and who have acted on its behalf.

80.    Accordingly, Plaintiff is entitled to a declaratory judgment against MDC that the unlawful acts set forth herein were unconstitutionally perpetrated on behalf of MDC, together with an order of damages.

- 22 -

CASE NO.:  95-2711-CIV-MARCUS

## FOURTH CLAIM FOR RELIEF

81.    CEI repeats and realleges the allegations in Paragraphs 1 through 64 herein.

82.    MDC has breached the referenced Bid Proposal contract resulting in damages to CEI.  Pursuant to the Bid Proposal contract, MDC was required to order GPP from CEI pursuant to the Bid and Contract.  In the event that it could not utilize GPP, it was required to order Liquid Solution from CEI pursuant to the Contract.

83.    Defendants breached the Bid Proposal contract by failing to order either GPP or the Liquid Solution in the quantities provided in the Bid Proposal and, furthermore, breached the contract by ordering GPP and purchasing same from Carus and (based on information and belief), other third party vendors.

84.    Further, Defendants have breached the No Order Contracts by failing to place the required orders under the No Order Contracts, or, in certain cases placing de minimis orders which do not comply with the terms of the contract.  These breaches of the No Order Contracts is ongoing in certain cases and has resulted in damage to CEI.

## FIFTH CLAIM FOR RELIEF

85.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 64 and 81 through 84 herein.

86.    CEI is entitled to an order requiring MDC to specifically perform pursuant to the terms and conditions of the Bid Proposal contract and to order GPP and/or Liquid Solution as required from CEI for a period of two years at the prices set forth in the

- 23 -

CASE NO.: 95-2711-CIV-MARCUS

GPP Contract.

87. CEI is further entitled to an order requiring MDC to specifically perform pursuant to the terms and conditions of the No Order Contracts and to order supplies and products in the amounts listed in each No Order Contract.

## RESERVATION OF RIGHT TO AMEND TO ADD PUNITIVE DAMAGE CLAIM

Plaintiffs reserve the right to submit evidence to the Court to add a claim for punitive damages pursuant to the procedure in Section 768.72, Florida Statutes.

## RELIEF REQUESTED

WHEREFORE, Plaintiffs seek judgment against Defendants as follows:

a. Declaring that the actions taken by Defendants were unlawful and in violation of the Equal Protection Clause of the 14th Amendment and the Due Process Clause to the United States Constitution, 42 U.S.C. §§ 1981 and 1983, the Florida State Constitution and other applicable federal, state and local laws.

b. Declaring MDC's breach of contract, and that same was arbitrary and capricious and in violation of the Constitutions and laws of the State of Florida and the United States.

c. Declaring that the actions taken by Defendants were unconstitutionally perpetrated on behalf of MDC.

d. Awarding Plaintiffs compensatory damages in an amount to be determined by the Court, but no less than $47,000,000.00.

e. Awarding Plaintiffs reasonable attorneys' fees incurred by them in

- 24 -

CASE NO.:  95-2711-CIV-MARCUS

connection with this action, as well as interest, costs and disbursements of this action.

     f.    Granting Plaintiffs' request for specific performance of the Contract;

     g.    Granting Plaintiffs' request for specific performance of the NO Order

Contracts; and

     h.    Granting such other and further relief to Plaintiffs as may be just, equitable

and proper.

HORNSBY, SACHER, ZELMAN, STANTON, PAUL & BEILEY, P.A., ATTORNEYS AT LAW, 1401 BRICKELL AVENUE, SUITE 700, MIAMI, FLORIDA 33131 · (305) 371-8797

CASE NO.:  95-2711-CIV-MARCUS

## JURY DEMAND

Plaintiffs demand trial by jury for all issues triable as of right in this action.

Respectfully submitted,

BARTON S. SACHER, P.A.
Florida Bar No.  0691313
LAWRENCE D. WINSON, ESQUIRE
Florida Bar No. 204714

HORNSBY, SACHER, ZELMAN,
  STANTON, PAUL & BEILEY, P.A.
1401 Brickell Avenue
Suite 700 / 7th Floor
Miami, Florida  33131
Telephone:  (305) 371-8797
Telefacsimile:  (305) 374-2605
Counsel for Plaintiffs

- 26 -

CASE NO.:  95-2711-CIV-MARCUS

## VERIFICATION OF COMPLAINT

STATE OF FLORIDA       )
                       ) SS:
COUNTY OF DADE         )

I, RICHARD CASON, being duly sworn, deposes and says as follows:

1.  I have read the foregoing Verified Second Amended Complaint and know the contents thereof to be true, except as to the matters therein stated to be on information and belief, and, as to those matters, I have reason to believe that they are true.

FURTHER AFFIANT SAYETH NAUGHT.

Richard Cason, as President of Cason
Enterprises, Inc. and Individually

BEFORE ME, the undersigned, duly authorized to take acknowledgements in the State and County aforesaid, personally appeared RICHARD CASON, known to me to be the person designated in the foregoing Sworn Statement and he acknowledged before me that he executed the same freely and voluntary for the purposes described therein.

WITNESS, my hand and official seal this _29th_ day of August, 1997 in the County and State first above written.

NOTARY PUBLIC, STATE OF FLORIDA

NOTARY PUBLIC
SEAL OF OFFICE:

OFFICIAL NOTARY SEAL
JANICE S TIPP
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NO. CC369429
MY COMMISSION EXP. JUNE 6,1999

(Name of Notary Public: printed, typed or commissioned)

[X] Personally Known to me, or
[] Produced identification:_____

(Type of Identification
Produced)

- 27 -

CASE NO.:  95-2711-CIV-MARCUS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the above and foregoing was furnished by U.S. Mail this 2nd day of September, 1997 to Thomas A. Tucker Ronzetti, Esquire, Assistant County Attorney, Metro Dade Center, 111 N.W. 1st Street, Suite 2810, Miami, Florida 33128-1993.

By: _Laurence A. Winson_
Lawrence D. Winson

F:\...\1780\COMPLAI3.AMD--

- 28 -



METRO-DADE

BID NO. 4545-1/97-OTR-CW

OPENING: 1:00 P.M. Wednesday
DATE:    June 15, 1994

Crraig

## METROPOLITAN DADE COUNTY, FLORIDA

# I N V I T A T I O N

# T O   B I D

### T I T L E

POTASSIUM PERMANGANATE IN GRANULAR FORM FOR USE IN
WASTE WATER TREATMENT BY WASAD FOR A TWO (2) YEAR PERIOD
(APPROX. JULY 1, 1994 THRU JUNE 30, 1996)
WITH COUNTY OPTION TO RENEW FOR ONE (1) ADDITIONAL YEAR

## THE FOLLOWING ARE REQUIREMENTS OF THIS BID, AS NOTED BELOW:

| | |
|---|---|
| BID DEPOSIT AND PERFORMANCE BOND: | N/A |
| CATALOGUE AND LISTS: | N/A |
| EQUIPMENT LIST: | N/A |
| INDEMNIFICATION/INSURANCE: | SEE SECTION 2.0, PARA. 2.11 |
| PRE-BID CONFERENCE/WALK-THRU | N/A |
| RACE-CONSCIOUSNESS MEASURE: | N/A |
| SAMPLES/INFORMATION SHEETS: | SEE SECTION 2.0, PARA. 2.41 |
| SITE VISIT/AFFIDAVIT: | N/A |
| SOURCE OF SUPPLY: | SEE SECTION 2.0, PARA. 2.39 |
| TRADE CERTIFICATION: | N/A |
| WRITTEN WARRANTY: | N/A |

FOR INFORMATION CONTACT:   ABELIN RODRIGUEZ, CPPB

(305) 375-4258



EXHIBIT

A

Printed on Recycled Paper

# INSTRUCTIONS FOR MAILING A SEALED BID IN RESPONSE TO A SOLICITATION

1.  Each Bid returned to Metropolitan Dade County Clerk of the Board must have the following information clearly marked on the face of the envelope:

    a. Bidder's Name & Return Address
    b. Bid Number
    c. Opening Date of the Bid
    d. Title of the Bid

2.  The Bidder shall mail each Bid, and any applicable attachments, (composed of one Procurement Director's Copy, one Clerk of the Board's Copy and review copies as may be required) in one envelope, properly signed and completed. The enclosed Bid return envelope should be used whenever possible.

3.  If Bids are being submitted at the same time for different Bid Solicitations, each distinct Bid shall be placed in separate envelopes and each envelope shall carry proper identification as outlined above.

4.  The responsibility for obtaining, completing and submitting this Proposal to Metropolitan Dade County Clerk of the Board on or before the stated time and date will be solely and strictly the responsibility of the Bidder. Dade County will in no way be responsible for delays caused by the United States mail delivery or caused by any other occurrence. Bids received by the Clerk of the Board after the time and date stipulated in the solicitation shall be considered non-responsive.

5.  Bids must be submitted to the address listed below at the time specified on the Cover Sheet to be considered for award.

CLERK OF THE BOARD
METRO-DADE CENTER
111 N.W. 1st STREET
SUITE 210
MIAMI, FLA 33128

It is the policy of Metro-Dade County to comply with all of the requirements of the Americans with Disabilities Act. For sign language interpreter services call 375-5289 five days in advance. For bids in accessible format (Braille, tape or large print) call 375-5289. For ADA complaints, 375-5289 or 375-3566.

---

**IMPORTANT NOTICE TO ALL VENDORS**

## COUNTY POLICY FOR PROCUREMENT OF RECYCLED PRODUCTS

Metropolitan Dade County has adopted an affirmative procurement program requiring the use of waste reducing, recycled and recyclable products by County departments. The use of such products will reduce the quantity and toxicity of waste generated and will increase the overall demand for recycled and recyclable products.

Vendors are encouraged to identify any products available for use by the County that meet the minimum content standards for recovered materials as set forth by the United States Environmental Protection Agency (EPA). The County also requests information regarding any known or potential material content in the products offered that may be extracted and recycled after the product has served its intended use.

These items and any supporting documentation or samples should be submitted for evaluation and possible inclusion in the future bids to:

METROPOLITAN DADE COUNTY
GSA/PROCUREMENT MANAGEMENT DIVISION
OFFICE OF QUALITY ASSURANCE
111 N.W. 1st STREET, SUITE 2350
MIAMI, FLORIDA 33128-1989

## SECTION 1.0   GENERAL TERMS AND CONDITIONS

### 1.1   APPLICABILITY

These General Terms and Conditions apply to all offers made to Metropolitan Dade County, Florida (herein after referred to as "County") by all prospective vendors (herein after referred to as "Bidders") on behalf of Solicitations including, but not limited to, Invitations to Bid, Requests for Proposals, Requests for Quotes, and Requests for Qualifications. As such, the words "Bid" and "Proposal" are used interchangeably in reference to any and all offers submitted by prospective vendors.

### 1.2   CONTENTS OF BID

#### A.   GENERAL CONDITIONS

Bidders are required to submit their Proposals in conjunction with the following expressed conditions:

(1)   Bidders shall thoroughly read and examine all Bid documents. As Bid documents frequently change for each Solicitation, Bidders should not assume that this Solicitation contains the same terms and conditions that were supplied in prior Solicitations. The County is not obligated to identify any modifications to Bid documents.

(2)   Bidders shall make all investigations necessary to thoroughly inform themselves regarding plant and facilities for delivery of material and equipment as required by the Bid conditions. No plea of ignorance by the Bidder of conditions that exist, or that may hereafter exist as a result of failure to fulfill the requirements of the contract documents, will be accepted as a basis for varying the requirements of the County, or the compensation to the vendor.

(3)   Bidders are advised that all County contracts are subject to all legal requirements contained in the County Purchasing Administrative Order 3-2 and/or State and Federal Statutes. When conflicts between this Bid Solicitation and these legal documents occur, the higher authority shall prevail.

#### B.   VARIANCES IN TERMS AND CONDITIONS

Where there appears to be variances or conflicts between these General Terms and Conditions and the Special Terms and Conditions and/or Technical Specifications outlined in the Bid Solicitation, the Technical Specifications, then Special Conditions, in that order, shall prevail.

#### C.   CLARIFICATION AND ADDENDUM TO BID SPECIFICATIONS

If any person contemplating submitting a Bid under this Solicitation is in doubt as to the true meaning of the specifications or other Bid documents or any part thereof, the Bidder must submit to the County's Director of Procurement at least seven (7) calendar days prior to scheduled Bid opening, a request for clarification. All such requests for clarification must be made in writing and the person submitting the request will be responsible for its timely delivery.

Any interpretation of the Bid, if made, will be made only by Addendum duly issued by the County's Procurement Director. The County shall issue an Informational Addendum if clarification or minimal changes are required. The County shall issue a Formal Addendum if substantial changes which impact the technical submission of Proposals is required. A copy of such Addendum will be mailed to each Bidder receiving the Solicitation. In the event of conflict with the original Contract Documents, Addendum shall govern all other Contract Documents to the extent specified. Subsequent addendum shall govern over prior addendum only to the extent specified.

The Bidder shall be required to acknowledge receipt of the Formal Addendum by signing the Addendum and including it with the Bid Proposal. Failure of a bidder to include a signed Formal Addendum in its bid Proposal shall deem its Proposal non-responsive; provided, however, that the County may waive this requirement in its best interest. The County will not be responsible for any other explanation or interpretation made verbally or in writing by any other county representative.

**D.   PRICES CONTAINED IN BID**

(1)   Prompt Payment Terms

    a.   Bidders may offer a cash discount for prompt payment; however, such discounts shall not be considered in determining the lowest net cost for Bid evaluation purposes. Bidders are encouraged to reflect cash discounts in the payment terms.

    b.   Bidders are required to provide their Prompt Payment Terms in the space provided on the Bid Proposal signature page of this Solicitation. If no prompt payment discount is being offered, the Bidder shall enter a zero (0) for the percentage discount to indicate net 30 days. If the Bidder fails to enter a percentage discount, it is hereby understood and agreed that the terms shall be 2% 20 days, effective after receipt of invoice or final acceptance by the County, whichever is later.

(2)   Current Prices

Bids indicating price in effect "at time of shipment" will be considered invalid.

(3)   Discounts Offered During Term Of Contract

Price discounts off the original prices quoted in the Bid Proposal Form will be accepted from successful bidders during the term of the contract.

(4)   Collusion

The Bidder, by affixing a signature to this Proposal, certifies that its Bid is made without previous understanding, agreement, or connection either with any person, firm or corporation making a Bid for the same items, or with the Dade County Procurement Division or initiating department. The Bidder also certifies that its Bid is in all respects fair, without outside control, collusion, fraud, or otherwise illegal action. To insure integrity to the County's public procurement process, all Bidders are hereby placed on notice that any and all Bidders who falsify the certification required in conjunction with this section shall be prosecuted to the fullest extent of the law.

## 1.3   PREPARATION AND SUBMISSION OF BID

### A.   PREPARATION/SUBMISSION

Bids will be prepared in accordance with the following:

(1)   Dade County's Bid Proposal Form which is attached to this Solicitation shall be used when the Bidder is submitting its Bid. No other form will be accepted.

(2)   All information required by the Bid document furnished by the Bidder shall be listed on the Bid Proposal Form. If the Bidder fails to supply any of these required documents and/or samples as required, its Bid shall be considered non-responsive and shall not be considered.

(3)   The Bidder shall print or type its name on each continuation sheet on which an entry is made and shall manually sign the last page of the Bid Proposal Form. If the Bidder's authorized agent fails to sign the Bid Proposal Form its Bid shall be considered non-responsive and shall not be considered.

(4)   Unit prices shall be shown. Where there is an error in extension of price, the unit price shall prevail.

(5)   Alternate or Multiple Bids will be considered non-responsive unless specifically authorized by the Special Conditions.

(6)   Proposed delivery time, if required in the Special Conditions and/or Technical Specifications,

(7)  E     rs shall not charge federal taxes nor Sta    of Florida sales, excise, and use taxes in Bi
pr      as the County is exempt from payment (     ich taxes. An exemption certificate will be
sign  d where applicable upon request.

(8)  The Bid must be typed or printed in ink. Use of pencil or erasable ink is not permitted. A
corrections made by the Bidder must be initialed in ink by the authorized agent. Those Proposals
which do not comply with these conditions will be declared non-responsive.

(9)  Telegraphic Bids and or Facsimile Bids will not be considered.

(10)  Once Bids have been opened, the County shall not consider any subsequent submission of
alternate terms and conditions.

## B.  VENDOR APPLICATION/ADMINISTRATIVE FEE

(1)  All current and prospective vendors to the County are required to remit a yearly Administrative
Fee to the Metro-Dade Board of County Commissioners to help defray the increasing costs of
printing, advertising and processing bids, application, related documents and mailings. Each
firm registered with the County will be notified annually of the requirement, and sent a Vendor
Application package to update the information in the file.

The following documents are required of all companies interested in conducting business with
Metro-Dade County, Florida, and must be submitted with the Application.

a)  Articles of Incorporation:  Every Florida-based corporation is required to submit a copy
of the single Certification Page that was signed and dated by the Florida Secretary of State
indicating State receipt of the duly executed Articles of Incorporation.

b)  Business or Occupational License:  All Dade County-based businesses are required to
purchase an Occupational License to conduct business within the County. Other states,
or municipalities may also require such a license. Every business submitting an Application
to Metro-Dade County must include a copy of the Business or Occupational License or a
written statement on letterhead indicating the reason no license exists.

c)  Vendor Disclosure of Ownership Affidavit:  In accordance with Ordinance Number
88-121, the County is prohibited from issuing Purchase Orders and contracts to any business
failing to fully disclose its legal name, physical address and ownership. Only publicly traded
corporations and governmental agencies are exempt from this requirement.

d)  Business Activity in the Republic of South Africa/Namibia Affidavit:  In accordance
with Resolution Number 1044-88, purchases from companies or sole-proprietorships with
business involvements in South Africa or Namibia shall have purchase restrictions placed
upon them by the County.

e)  State of Florida Affidavit on Public Entity Crime: Pursuant to Florida Statutes, Sections
287.132-.133, effective July 1, 1989, the Florida Department of General Services must
maintain a "convicted vendor" list consisting of persons and affiliates who are disqualified
from public contracting and the purchasing process because they have been found guilty
of a public entity crime.

No bid shall be awarded to a vendor convicted of a Public Entity Crime. A Public Entity
Crime Affidavit noting the specific bid number shall be obtained from the successful bidder
prior to award. The Affidavit can be an original or faxed copy. No award can be made without
this Affidavit.

(2)  It is the Bidder's responsibility to update its application with new addresses, telephone numbers,
contact persons and existing commodities and services provided by the Bidder. The Bidder
may contact the GSA Procurement Management Division's Office of Vendor Assistance at
(305) 375-5289 for guidance in completing the Vendor Application.

## C.  MAINTAINING BID STATUS

To be retained on the active Bidders list for the commodity or service requested through this
Solicitation, the Bidder must respond to this Solicitation. If a Bid Proposal will not be offered by the
Bidder,                          protect its status as an active Bidder for the commodity or service solicited
by com                              last page of the Bid Proposal form indicating a response for "No Bid"

D.  MINORITY  VENDORS

The County is earnestly endeavoring to obtain the participation of minority businesses Minorities are encouraged to contact the GSA Procurement Management Division's Office of Vendor Assistance at (305) 375-5289 for information.

## 1.4  MODIFICATION OR WITHDRAWAL OF BIDS

### A.  MODIFICATION TO BIDS

Bids may only be modified in the form of a written notice on company letterhead and must be received prior to the time and date set for the Bid opening. Each modification submitted must have the following information clearly marked on the face of the envelope:

(1)  Bidder's Name & Return Address
(2)  Bid Number
(3)  Opening Date of the Bid
(4)  Title of the Bid
(5)  The following statement:
"This modification supersedes any Bid or modification previously submitted."

If more than one modification is submitted, the modification bearing the latest date of receipt will be considered the valid modification.

### B.  WITHDRAWAL OF BIDS

(1)  Bids may be withdrawn prior to the time and date set for the Bid opening. Such requests must be made in writing on company letterhead.

(2)  Bid Proposals or any portion thereof under evaluation may not be withdrawn after the time and date set for the Bid opening for a period of ninety (90) days. If a Bid is withdrawn by the Bidder during this ninety day period, the County shall not accept any Proposal from the Bidder for a period not to exceed one (1) year following the withdrawal.

## 1.5  EVALUATION OF BIDS

### A.  REJECTION OF BIDS

The County Manager or designee may reject a Bid under any of the following conditions:

(1)  The Bidder fails to acknowledge receipt of formal addendum;

(2)  The Bidder misstates or conceals any material fact in the Bid;

(3)  The Bid does not strictly conform to the law or requirements of the Bid;

(4)  The Bid requires a conditional award that conflicts with the method of award stipulated in the Special Conditions.

(5)  The Bid does not include documents, certificates, licenses, and/or samples which are required for submission in conjunction with the Special Conditions and/or the Technical Specifications.

(6)  The Bid has not been executed by the Bidder through an authorized signature

(7)  The County may reject and re-advertise for all or any part of Bids whenever it is deemed in the best interest of the County.

## B.  ELIMINATION FROM CONSIDERATION

(1)  A Proposal may not be accepted from, nor any Contract be awarded to, any person or firm which is in arrears to Dade County upon any debt or Contract or which is a defaulter as surety or otherwise upon any obligation to Dade County.

(2)  A Proposal may not be accepted from, nor any Contract be awarded to, any person or firm which has failed to perform faithfully any previous Contract with County, State or Federal Governments for a minimum period of one (1) year after this previous Contract was terminated for cause.

(3)  A Proposal will not be accepted from, nor any Contract be awarded to, any person or firm which has been debarred by Dade County in accordance with, and during the period of time established by, Dade County's debarment procedures.

## C.  WAIVER OF INFORMALITIES

Dade County reserves the right to waive any minor informalities or irregularities in any or all Bids.

## D.  DEMONSTRATION OF COMPETENCY

(1)  Pre-award inspection of the Bidder's facility may be made prior to the award of contract. Bids will only be considered from firms which are regularly engaged in the business of providing the goods and/or services as described in this Bid. Bidders must be able to demonstrate a good record of performance for a reasonable period of time, and have sufficient financial support, equipment and organization to insure that they can satisfactorily execute the services if awarded a contract under the terms and conditions herein stated. The terms "equipment and organization" as used herein shall be construed to mean a fully equipped and well established company in line with the best business practices in the industry and as determined by Metropolitan Dade County, Florida.

(2)  The County may consider any evidence available regarding the financial, technical and other qualifications and abilities of a Bidder, including past performance (experience) with the County in making the award in the best interest of the County.

(3)  The County may require Bidders to show proof that they have been designated as authorized representatives of a manufacturer or supplier which is the actual source of supply. In these instances, the County may also require material information from the source of supply regarding the quality, packaging, and characteristics of the products to be supplied to the County through the designated representative. Any conflicts between this material information provided by the source of supply and the information contained in the Bidder's Proposal may render the Bid non-responsive.

(4)  The County may, during the period that the Contract between the County and the successful Bidder is in force, review the successful Bidder's record of performance to insure that the Bidder is continuing to provide sufficient financial support, equipment and organization as prescribed in this Solicitation. Irrespective of the Bidder's performance on contracts awarded to it by the County, the County may place said contracts on probationary status and implement termination procedures if the County determines that the successful Bidder no longer possesses the financial support, equipment and organization which would have been necessary during the Bid evaluation period in order to comply with this demonstration of competency section.

E.   COPY OF BID TABULATIONS

For tabulation of bids, the Bidder shall enclose a self-addressed, stamped

### 1.6   AWARD OF CONTRACT

A.   The contract will be awarded to the lowest responsive, responsible Bidder(s) whose Bid(s), conforming to the Solicitation, is most advantageous to Dade County. The lowest responsive, responsible Bidder's will be determined in conjunction with the method of award which is described in the Special Conditions. Tie Bids will be decided by the Director of Procurement.

B.   The County shall award a contract to a Bidder through action taken by the Director of Procurement. This action shall be administratively supported by a written award of acceptance (Purchase Order), mailed or otherwise furnished to the successful Bidder; which shall constitute a binding contract without further action by either party.

C.   The General Terms and Conditions, the Special Conditions, the Technical Specification, the Bidder's Proposal and the Purchase Order are collectively an integral part of the contract between Metropolitan Dade County and the successful Bidder.

D.   While the Director of Procurement may determine to award a contract to a Bidder(s) under this Solicitation, said award may be conditional on the subsequent submission of other documents as specified in the Special Conditions. The Bidder shall be in default of the contractual obligations if any of these documents are not submitted in a timely manner and in the form required by the County. If the Bidder is in default, the County, through the Director of Procurement, will void its acceptance of the Bidder's offer and may determine to accept the offer from the second lowest responsive, responsible Bidder or re-solicit Proposals. The County may, at its sole option, seek monetary restitution from the Bidder as a result of damages or excess costs sustained and/or may prohibit the Bidder from submitting future Proposals for up to a one year period.

E.   The Term of the Contract shall be stipulated in the Purchase Order which is issued to the successful Bidder(s). Where there is a conflict between the contractual period stipulated in the Solicitation and the contractual period stipulated on the Purchase Order, the Purchase Order shall prevail. If the contract involves a single shipment of goods to the County the contract term shall be concluded upon completion of expressed and implied warranty periods.

F.   The County reserves the right to exercise the option to renew a term contract of any successful Bidder(s) to a subsequent optional period; provided that such option is stipulated in the Special Conditions. If the County exercises the right in writing, the Bidder shall update and submit any legal documents required during the initial Solicitation by no later than sixty (60) calendar days prior to the commencement of the option period. These documents, which are specified in the Special Conditions and include, but are not limited to, insurance certificates and performance bonds, must be in force for the full period of the option. If the updated documents are not submitted by the Bidder in complete form within the time specified, the County may rescind its option, declare the Bidder to be in default of its contractual obligations and award to the next low bidder or seek a new bid Solicitation. The County may, at its sole option, seek monetary restitution from the Bidder as a result of damages or excess costs sustained and/or may prohibit the Bidder from submitting future Proposals for a period of one year.

G.   The County reserves the right to automatically extend this contract for a maximum period not to exceed ninety (90) calendar days in order to provide County departments with continual service and supplies while a new contract is being solicited, evaluated and/or awarded. If this right is exercised, the County shall notify the Bidder, in writing, of its intent to extend the contract for a definitive period of time prior to the effective date of the extension. By affixing its authorized signature to this Bid Proposal Form, the Bidder hereby acknowledges and agrees to this right.

## 1.7   APPEAL ( RECOMMENDED AWARD

A.  Responsive Bidders whose Proposals are lower than recommended vendors and who are notified that their proposal will not be recommended for award because their Bid did not meet the technical requirements in the Solicitation may appeal this recommendation by submitting, in writing, a request for appeal to the Metropolitan Dade County Procurement Director. This request, which outlines the reasons for Appeal, must be received by the Procurement Director within seven (7) calendar days after the date of Dade County's notification to the Bidder. Bidders which appeal directly to the Board of County Commissioners shall be referred back to the Procurement Director in accordance with these established appeal procedures.

NOTE: Non-responsive Bidders will receive no notification.

B.  The County is the sole authority for determining each Bid's responsiveness and each Bidder's responsibility. For this reason, Bidders whose prices are higher than the lowest responsive, responsible Bidder(s) shall not be provided rights of appeal.

C.  All costs accruing from a Bid challenge related to quality (tests etc.) shall be assumed by the challenger.

## 1.8   CONTRACTUAL OBLIGATIONS

### A.   LOCAL, STATE, AND FEDERAL COMPLIANCE REQUIREMENTS

Successful Bidders shall be familiar and comply with all local, state, and federal directives, ordinances, rules, orders, and laws as applicable to, and affected by, this contract and subsequent contract(s) including but not limited to:

(1)  Equal Employment Opportunity (EEO), in compliance with Executive Order 11246 as amended and applicable to this contract.

(2)  Minority Business Enterprise (MBE), as applicable to this contract.

(3)  Occupational Safety and Health Act (OSHA), as applicable to this contract.

(4)  Environmental Protection Agency (EPA), as applicable to this contract.

(5)  Metropolitan Dade County Code, Chapter 11A, Article 3. All contractors and subcontractors performing work in connection with this project shall provide equal opportunity for employment and shall agree not to discriminate against any employee or applicant for employment because of race, religion, color, age, sex, national origin, or place of birth. The aforesaid provision shall include, but not be limited to, the following: employment, upgrading, demotion or transfer, recruitment advertising; layoff or termination; rates of pay or other forms of compensation; and selection for training, including apprenticeship. The contractors agree to post in conspicuous places available for employees and applicants for employment, such notices as may be required by the Dade County Fair Housing and Employment Commission, or other authority having jurisdiction over the work setting forth the provisions of the non-discrimination law.

### B.   CONDITIONS OF PURCHASE

It is agreed that contractual items shall comply with all Federal, State or local laws relative thereto, and that the contractor shall defend actions or claims brought and save harmless the County from loss, cost or damage by reason of actual or alleged infringements of letters patented.

C.   CONDITIONS OF MATERIAL AND PACKAGING

(1)   All items furnished must be new, unless otherwise specified in the Special Conditions, and free from defects. All containers shall be new and suitable for storage or shipment. The Bid price shall include standard commercial packaging.

(2)   All materials hereinafter specified shall be fully guaranteed by the Bidder against factory defects. Any defects which may occur as the result of either faulty material or workmanship within the period of the manufacturer's standard warranty or damages which may occur in shipment will be corrected by the Bidder at no expense to Dade County.

D.   ASSIGNMENT

The contractor shall not assign, transfer, convey, sublet or otherwise dispose of this contract, including any or all of its right, title or interest therein, or his or its power to execute such contract to any person, company or corporation without prior written consent of the County.

E.   DELIVERY

Prices quoted and deliveries are to be FOB Destination freight prepaid unless otherwise specified in the Special Conditions of the Solicitation. Deliveries shall be made during County business hours. Title and risk of loss shall pass to the County upon inspection and acceptance by the County at its designated delivery point; unless otherwise specified in the Special conditions.

F.   CLAIMS

The Bidder will be held responsible for making any and all claims against carriers or sub-contractors for missing or damaged items and shall ensure that the County is appropriately compensated for these missing or damaged items to the satisfaction of the County.

G.   PERFORMANCE

In order to protect the vested interests of the Citizens of Dade County, Florida, and to insure the efficient utilization of the tax dollars, successful Bidders shall comply with all contractual obligations contained in the General Terms and Conditions, the Special Conditions, the Technical Specifications and the Bid Proposal Form. With respect to these obligations, the County has established formal performance monitoring techniques to insure compliance. Reports from Dade County agencies which identify non-compliance issues shall be forwarded to the successful Bidder for corrective action. Continued non-compliance by the Bidder shall be the County's justification for placing the Bidder's Contract on probational status and/or termination.

H.   RE-PROCUREMENT CHARGES

In the event that the Bidder defaults on its contract or the contract is terminated for cause due to performance, Dade County reserves the right to re-procure the articles or services from the next lowest Bidder or from other sources during the remaining term of the terminated/defaulted Contract. Under this arrangement the County shall charge the Bidder any difference in cost between the Bidder's price and the price to be paid to the next lowest Bidder as well as any costs associated with resolicitation which result from such default or termination.

## 1.9   MODIFICATIONS TO EXISTING CONTRACT

A.   The Director of Procurement is the only authority in the County that can establish maximum dollar values and time limits for Informal Bid Awards.  In the event that a County agency or department requires additional dollars and/or time for an existing contract, the County's Procurement Director shall approve these additions. If granted this approval, the County shall issue a change order to the original purchase order to the Bidder. For this reason, the Bidder is advised prior to honoring orders which extend beyond the dollar and/or time limits of the original purchase order, to ensure the County provides ...

B.   Terms and Conditions, other than those specified in the General Terms and Conditions, may be added, modified, and/or deleted upon mutual agreement between agents of the County and the Bidder, provided that such terms and conditions remain within the scope and original intent of the Solicitation. Said terms and conditions may include additions or deletions of service levels and/or commodities. Any and all additions, deletions, and/or modifications must be expressed in writing through a Memorandum of Understanding and executed by authorized agents of the County and the Bidder prior to the enactment of such additions, deletions, and/or changes.

## 1.10   TERMINATION OF CONTRACT.

A.   The County may, by written notice to the successful Bidder, terminate the Contract if the Bidder has been found to have failed to perform its service in a manner satisfactory to the County as per specifications; including delivery as specified. The date of termination shall be stated in the notice. The County shall be sole judge of non-performance and has the right to suspend the Bidder for a maximum period of one year.

B.   The County may cancel the Contract upon thirty (30) days written notice for reasons other than cause. This may include the County's inability to continue with the contract due to the elimination of funding.

## 1.11   FURTHER INFORMATION

This Solicitation is issued on behalf of the County by the General Services Administration, Procurement Management Division which is the primary point of contact in the County. Requests for further information except as specified in the General Terms and Conditions should be addressed to the Procurement Specialist listed on the front page of this Invitation. The Specialist can be reached at Metropolitan Dade County, GSA/Procurement Management, Suite 2350, 111 N.W. 1st Street, Miami, Florida 33128-1989. Telephone (305) 375-5289.

**HAL A. JOHNSON**
Director, GSA/Procurement Management
Metropolitan Dade County, Florida

METROPOLITAN DADE COUNTY

BID NO. 4545-1/97-OTR-CW

## SECTION 2.0 SPECIAL CONDITIONS

## BULK DELIVERY OF POTASSIUM PERMANGANATE

2.1 PURPOSE: TO ESTABLISH A CONTRACT FOR A COUNTY DEPARTMENT

The purpose of this Invitation to Bid is to establish a contract for the purchase of Potassium Permanganate in Bulk in conjunction with the needs of Dade County's Water and Sewer Authority Department (WASAD) on an as needed when needed basis.

2.2 Intentionally Omitted

2.3 Intentionally Omitted

2.4 TERM OF CONTRACT: FIXED PERIOD

This contract shall commence on the first calendar day of the month succeeding approval of the contract by the Board of County Commissioners unless otherwise stipulated in the Notice of Award Letter which is distributed by the County's GSA Procurement Management Division. The contract shall remain in effect for twenty-four (24) months.

2.5 OPTION TO RENEW (1) ONE YEAR (With Price Adjustment)

The prices for a two year period from effective date shall be consistent with the provisions outlined in section 2.7 of these special terms and conditions; at which time Dade County shall have the option to renew for an additional one year period. At that time Dade County will consider an adjustment to price based on direct and documented price increases by product manufacturer. Adjustments in excess of 5% per item shall not be considered. Continuation of the contract beyond the initial period is a County prerogative; not a right of the bidder. This prerogative will be exercised only when such continuation is clearly in the best interest of the County.

In the event that the bidder declines the County's right to exercise the option period, the County shall suspend the bidder from submitting bid proposals for a minimum period of six (6) months; provided however, that the County may waive the suspension period if the bidder is unable to accept the option period due to extenuating circumstances beyond its control.

If the bidder does not have, and fails to provide within ten (10) days of notification, a current vendor application and other required forms, the County shall suspend the bidder for a minimum period of six (6) months.

NOTE:     BIDDERS CAN ONLY EXERCISE THE OPTION TO RENEW PRIVILEGES FOR THOSE ITEM/S AWARDED TO THEIR FIRM, UNDER THE ORIGINAL TERMS AND CONDITIONS, DURING THE INITIAL CONTRACT PERIOD.

METROPOLITAN DADE COUNTY      -    BID NO. 4545-1/97-OTR-CW

> ANY ITEM/S THAT WERE AWARDED TO ANOTHER BIDDER/S, CAN ONLY BE RENEWED BY THE OTHER BIDDER/S.
>
> PRICES SUBMITTED FOR ITEM/S NOT ORIGINALLY AWARDED TO THE BIDDER/S OR, FOR WHICH A "NO BID" WAS RECEIVED, WILL BE REJECTED.

### 2.6   METHOD OF AWARD TO A SINGLE BIDDER: (Single Item)

Award of this contract will be made to the lowest responsive, responsible bidder. Exclusive of the option.

### 2.7   PRICES SHALL BE FIXED AND FIRM FOR TERM OF CONTRACT

If the bidder is awarded a contract under this bid solicitation, the prices proposed by the bidder shall remain fixed and firm during the term of contract; provided, however, that the bidder may offer incentive discounts from this fixed price to the County at any time during the contractual term.

### 2.8   Intentionally Omitted

### 2.9   Intentionally Omitted

### 2.10   Intentionally Omitted

### 2.11   INDEMNIFICATION AND INSURANCE - (10) - SERVICE REQUIRING PRODUCTS AND COMPLETED OPERATIONS LIABILITY

The successful bidder/vendor shall indemnify and save the County harmless from any and all claims, liability, losses and causes of action which may arise out of the fulfillment of the Agreement'. The vendor shall pay all claims and losses of any nature whatever in connection therewith, and shall defend all suits, in the name of the County when applicable, and shall pay all costs and judgments which may issue thereon.

The vendor shall furnish to Bid Section, Metropolitan Dade County, c/o Procurement Management Division, 111 N.W. 1 Street, Suite 2350, Miami, Florida 33128-1989, Certificate(s) of Insurance which indicate that insurance coverage has been obtained which meets the requirements as outlined below:

A. Workmen's Compensation Insurance for all employees of the vendor as required by Florida Statute 440.

B. Public Liability - this policy shall be endorsed to include products & completed operations liability insurance on a comprehensive basis in an amount not less than $300,000 combined single limit per occurrence for bodily injury and property damage. Dade County must be shown as an additional insured with respect to this coverage.

METROPOLITAN DADE COUNTY                    BID NO. 4545-1/97-OTR-CW·

C. Automobile Liability Insurance covering all owned, non-owned and hired vehicles used in connection with the work, in an amount not less than $300,000 combined single limit per occurrence for bodily injury and property damage.

The insurance coverage required shall include those classifications, as listed in standard liability insurance manuals, which most nearly reflect the operations of the vendor.

All insurance policies required above shall be issued by companies authorized to do business under the laws of the State of Florida, with the following qualifications:

> The company must be rated no less than "B" as to management, and no less than "Class V" as to financial strength, by the latest edition of Best's Insurance Guide, published by A.M. Best Company Oldwick, New Jersey, or its equivalent, subject to the approval of the County Risk Management Division.

                              or

> The company must hold a valid Florida Certificate of Authority as shown in the latest "List of All Insurance Companies Authorized or Approved to Do Business in Florida", issued by the State of Florida Department of Insurance and are members of the Florida Guaranty Fund.

Certificates will indicate no modification or change in insurance shall be made without thirty (30) days written notice to the certificate holder.

NOTE: DADE COUNTY BID NUMBER AND TITLE OF BID MUST APPEAR ON EACH CERTIFICATE.

Compliance with the foregoing requirements shall not relieve the vendor of his liability and obligation under this section or under any other section of this Agreement.

Issuance of a purchase order is contingent upon the receipt of the insurance documents within fifteen (15) calendar days after Board of County Commission approval.  If the insurance certificate is received within the specified time frame but not in the manner prescribed in this Invitation To Bid, the Bidder shall be verbally notified of such deficiency and shall have an additional five (5) calendar days to submit a corrected certificate to the County.  If the Bidder fails to submit the required insurance documents in the manner prescribed in this Invitation To Bid within twenty (20) calendar days after Board of County Commission approval, the Bidder shall be in default of the contractual terms and conditions and shall not be awarded the contract.  Under such circumstances, the Bidder may be prohibited from

METROPOLITAN DADE COUNTY                    BID NO. 4545-1/97-OTR-CW

submitting future Proposal to the County in accordance with Section
1.0, Paragraph 1.6D of this General Terms and Conditions.

The Bidder shall be responsible for assuring that the insurance
certificates required in conjunction with this Section remain in force
for the duration of the contractual period; including any and all
option years: that may be granted to the Bidder in accordance with
Section 2.5 of the Special Conditions.  If insurance certificates are
scheduled to expire during the contractual period, the Bidder shall be
responsible for submitting new, or renewed insurance certificates to
the County at a minimum of thirty (30) calendar days in advance of
such expiration.   In the event that expired certificates are not
replaced with new or renewed certificates which cover the contractual
period, the County shall suspend the contract until such time as the
new or renewed certificates are received by the County in the manner
prescribed in the Invitation To Bid; provided, however, that this
suspended period does not exceed thirty (30) calendar days.  If such
suspension exceeds thirty (30) calendar days, the County may, at its
sole discretion, terminate this contract for cause and seek
re-procurement charges from the Bidder in conjunction with Section
1.0, Paragraph 1.8H of the General Terms and Conditions.

2.12  Intentionally Omitted

2.13  Intentionally Omitted

2.14  Intentionally Omitted

2.15  METHOD OF PAYMENT: PERIODIC INVOICES FOR COMPLETED DELIVERIES

The successful bidder(s) shall submit an invoice(s) to the County
using department(s) that has requested the items through a purchase
order.   The invoices shall reference the appropriate purchase order
number, the delivery address, and the corresponding delivery ticket
number or packing slip number that was signed by an authorized
representative of the County department when the items were delivered
and accepted.   The periodic invoices shall not exceed thirty (30)
calendar days from the delivery of the items.  Under no circumstances
shall the invoices be submitted to the County in advance of the
delivery and acceptance of the items.

2.16  SHIPPING TERMS: F.O.B. DESTINATION

All bidders shall quote prices based on F.O.B. destination and shall
hold title to the goods until such time as they are delivered to, and
accepted by, an authorized County representative at the Waste Water
Treatment Plant, Virginia Key Florida.

2.17  DELIVERY SHALL BE FOURTEEN (14)  DAYS AFTER ORDER IS PLACED BY THE
COUNTY

The bidder shall make deliveries within fourteen (14 ) calendar days
after the date that the County department orders the items.  All

METROPOLITAN DADE COUNTY

BID NO. 4545-1/97-OTR-CW

deliveries shall be made in accordance with good commercial practice and shall be adhered to by the successful bidder(s); except in such cases where the delivery will be delayed due to acts of God, strikes, or other causes beyond the control of the bidder. In these cases, the bidder shall notify the County of the delays in advance of the delivery date so that a revised delivery schedule can be negotiated.

The County shall not accept any back orders of deliveries from the bidder. Accordingly, the bidder is required to deliver all items to the County within the time specified in this solicitation; and no grace period shall be honored. In the event that the bidder fails to deliver the goods within the time specified, the County reserves the right to cancel the order, seek the items from another vendor, and charge the bidder for any re-procurement costs. If the bidder fails to honor these re-procurement costs, the County may suspend the bidder from submitting bid proposals on County contracts for a minimum period of six (6) months.

2.18  Intentionally Omitted

2.19  Intentionally Omitted

2.20  <u>CONTACT PERSON</u>

For any additional information regarding the specifications and requirements of this contract, Contact: Abelin Rodriguez at (305) 375-4258.

2.21  <u>FAMILY LEAVE POLICY</u>

The award of this purchase must comply with Ordinance 142-91 of the code of Metropolitan Dade County, Florida, effective March 15, 1992, for Procurements that exceed ten thousand ($10,000) dollars.

All bidders with at least fifty (50) employees for each working day during each of twenty (20) or more work weeks in the current or preceding calendar years submitting proposals in conjunction with this solicitation are hereby advised that award of this Procurement will be contingent upon receipt of an affidavit attesting to their firms Family Leave Policy.

Such policies must provide the employee with the following provisions:

An employee who has worked for the same employer for at least one (1) year shall be entitled to ninety (90) days of family leave during any twenty four (24) month period, for the birth or adoption of a child, or for the care of a child, spouse or other close relative who has a serious health condition.

A Family Leave Policy must entitle employees to take leave without risk of termination of employment or retaliation by employers.

METROPOLITAN DADE COUNTY                    BID NO. 4545-1/97-OTR-CW

The successful vendor will be required to submit this information
within fifteen (15) calendar days following written notification of
intent to award.  Failure to submit this sworn statement within the
specified time frame may result in the proposal being consider
non-responsive.

## 2.22  QUARTERLY REPORTING, WHEN SUB-CONTRACTORS ARE UTILIZED

Bidders are advised that when sub-contractors are utilized to fulfill
the terms and conditions of this contract, Metropolitan Dade County
Resolution No. 1634-93 will apply to this contract.  This resolution
requires the successful contractor(s) to file quarterly reports as to
the amount of contract monies received from the county and the amounts
thereof that have been paid by the contractor directly to Black,
Hispanic and Women-Owned businesses performing part of the contract
work.

Additionally, the listed businesses are required to sign the reports,
verifying their participation in the contract work and their receipt
of such monies.

For purposes of applicability, the requirements of this resolution
shall be in addition to any other reporting requirements required by
law, ordinance or administrative order.

## 2.23  LOCAL PREFERENCE

The award of this contract is subject to Ordinances 92-22, 92-77, and
Resolution No. R-963-92 amending the code of Metropolitan Dade County,
Florida effective July 31, 1992 which allows preference to be given to
local business in the amount of one percent (1%) of the bid or
proposal price.

For purposes of the applicability of this ordinance, "local business"
shall mean, the vendor has a place of business located in Dade or
Broward Counties at which it will produce the goods or perform the
services to be purchased.

## 2.24  ACCEPTANCE OF PRODUCT BY THE COUNTY

The products shall be maintained and delivered to the County in
excellent condition.  If a product does not meet specifications, it
will be returned to the bidder as exchange for suitable merchandise or
for full credit at no additional cost to the County.

## 2.25  ACCIDENT PREVENTION AND REGULATIONS

Precautions shall be exercised at all times for the protection of
persons and property.  All Contractors and Sub-Contractors shall
conform to all OSHA, State and County regulations while performing
under the Terms and Conditions of this contract.  Any fines levied by
the above mentioned authorities because of inadequacies to comply with
these requirements shall be borne solely by the bidder responsible for
same.

METROPOLITAN DADE COUNTY

BID NO. 4545-1/97-OTR-CW

## 2.26 ADDITIONAL FACILITIES MAY BE ADDED

Although this Solicitation identifies specific facilities to be serviced, it is hereby agreed and understood that any County department or agency facility may be added to this contract at the option of the County. Successful bidder(s) under this contract shall be invited to submit price quotes for these new facilities. If these quotes are comparable with prices offered for similar services, the award(s) shall be made to the lowest responsible bidder(s) meeting specifications in the best interest of the County and a separate purchase order shall be issued by the County. Notwithstanding, the successful bidder does not have an exclusive right to these additional sites. The County may determine to obtain price quotes for the additional facilities from other bidders in the event the County does not find the price quotes comparable.

## 2.27 COMPLIANCE WITH FEDERAL STANDARDS

All items to be purchased under this bid shall be in accordance with all governmental standards, to include, but not limited to, those issued by the Office of Safety and Health Administration (OSHA), the National Institute of Occupational Safety Hazards (NIOSH), and the National Fire Protection Association (NFPA).

## 2.28 COUNTY WIDE

Any Governmental Unit in Dade, Broward and Palm Beach Counties, Florida, may avail itself of this contract and purchase any and all items specified herein from the successful bidder(s) at the contract price(s) established herein.

Each Governmental unit which uses a contract(s) resulting herefrom, will establish its own contract, place its own orders, issue its own purchase orders, be invoiced therefrom and make its own payments and issue its own exemption certificates as required by the bidder.

It is understood and agreed that Dade County is not a legally binding party to any contractual agreement made between any governmental unit and the bidder as a result of this bid.

## 2.29 DAMAGED GOODS WHEN SHIPPING IS PROVIDED BY BIDDER

The bidder shall be responsible for filing, processing and collecting all damage claims against the shipper.

## 2.30 DELETION OF FACILITIES

Although this Solicitation identifies specific facilities to be serviced, it is hereby agreed and understood that any County department or agency may delete service for any facility(ies) when such service is no longer required during the contract period; upon fourteen (14) calendar days written notice to the successful bidder.

METROPOLITAN DADE COUNTY                    BID NO. 4545-1/97-OTR-CW

2.31  <u>DELIVERY TIMES SPECIFIED</u>

The Bidder shall only be authorized to deliver items between the hours
of 8:00 a.m. and 4:00 p.m.

2.32  <u>EMPLOYEES ARE RESPONSIBILITY OF BIDDER</u>

All employees of the bidder shall be considered to be, at all times,
the sole employees of the bidder under its sole direction and not an
employee or agent of Dade County.  The bidder shall supply competent
and physically capable employees.  Dade County may require the bidder
to remove an employee it deems careless, incompetent, insubordinate or
otherwise objectionable and whose continued employment on Dade County
property is not in the best interest of the County.  Each employee
shall have and wear proper identification.

2.33  <u>ESTIMATED QUANTITIES</u>

Estimated quantities or estimated dollars are provided for bidder's
guidance only.  No guarantee is expressed or implied as to quantities
or dollars that will be used during the contract period.  The County
is not obligated to place an order for any given amount subsequent to
the award of this bid.  Estimates are based upon the County's actual
needs and usage during a previous contractual period.  Said estimates
may be used by the County for purposes of determining the low bidder
meeting specifications.

2.34  <u>LEGAL REQUIREMENT FOR POLLUTION CONTROL</u>

It is the intent of these Specifications to comply with the Dade
County Pollution Control Ordinance as stated in Chapter 24 of the
Metro-Dade Code.   This ordinance is made a part of these
specifications by reference and may be obtained, if necessary, by the
bidder through the department of Environmental Resources Management
(DERM), 33 S.W. 2nd Avenue, Miami, Florida 33130, Telephone 372-6754.

2.35  <u>OMISSION FROM THE SPECIFICATIONS</u>

The apparent silence of this specification and any addendum regarding
any details or the omission from the specification of a detailed
description concerning any point shall be regarded as meaning that
only the best commercial practices are to prevail, and that only
materials and workmanship of first quality are to be used.   All
interpretations of this specification shall be made upon the basis of
this agreement.

2.36  <u>PACKING SLIP/DELIVERY TICKET TO ACCOMPANY ITEMS DURING DELIVERY</u>

The successful bidder shall enclose a complete packing slip or
delivery ticket with any items to be delivered in conjunction with
this bid solicitation.  The packing slip shall be attached to the
shipping carton(s) which contain the items and shall be made available
to the County's authorized representative during delivery.   The
packing slip or delivery ticket shall include, at a minimum, the
following information: purchase order number; date of order; a

METROPOLITAN DADE COUNTY

BID NO. 4545-1/97-OTR-CW

complete listing of items being delivered; and back-order quantities and estimated delivery of back-orders if applicable.

### 2.37 PROTECTION OF PROPERTY

All existing structures, utilities, services, roads, trees, shrubbery, etc. shall be protected against damage or interrupted services at all times by the bidder during the term of this contract; and the bidder shall be held responsible for repairing or replacing property to the satisfaction of the County which is damaged by reason of the bidder's operation on the property.

### 2.38 REVIEW COPY OF BID PROPOSAL REQUIRED

In addition to Item 2 of the "Instructions For Mailing a Sealed Bid in Response to a Solicitation" which requires one copy of the Bid Proposal for the Procurement Director and one copy of the Bid Proposal for the Clerk of the Board, the bidder should also submit one (1) additional review copies of the Bid Proposal form and all attachments when submitting its sealed bid proposal to the County.

### 2.39 SUPPLIERS OF MATERIALS/PRODUCTS SHALL BE IDENTIFIED

If the Bidder shall be utilizing a third party distributor or manufacturer as the source of supply for obtaining and delivering products and/or materials required in conjunction with this Bid Solicitation, the Bidder shall be required to supply a copy of its contractual agreement with the supplier in its Bid Proposal form. The information contained in this contractual agreement shall include, but not be limited to: shipping and delivery terms, packaging requirements, and product specification sheets that attest to the quality of the product. If the bidder fails to submit this information with the Bid Proposal Form, the bidder may be allowed to submit this documentation to the County during the bid evaluation period if such action is in the best interest of the County.

### 2.40 TESTING OF RANDOM SAMPLES

Samples of delivered items may be randomly selected and tested for compliance with these specifications. If it is found that the delivered commodities do not conform to the specifications, the County shall require replacement within a reasonable length of time and may cancel the contract for cause.

### 2.41 TOXIC-NON-TOXIC SUBSTANCES

The Federal "Right to Know" Regulation implemented by the Occupational Safety and Health Administration (OSHA) and the Florida "Right-to-Know" Law requires employers to inform their employees of any toxic substances to which they may be exposed in the workplace, and to provide training in safe handling practices and emergency procedures. It also requires notification to local fire departments of the location and characteristics of all toxic substances regularly present in the workplace.

METROPOLITAN DADE COUNTY                          BID NO. 4545-1/97-OTR-CW

Accordingly, Bidder(s) may be requested to provide Material Safety
Data Sheets during the evaluation period. The successful Bidder(s)
shall be required to provide two (2) complete sets upon request,
prior to award.

Additionally, the successful Bidder(s) must submit a list of all
chemical products (soaps, glass cleaners, detergents, degreasers,
etc.) they propose to use to accomplish the work specified.   The
County is endeavoring to use environmentally safe products and may
require any product named to be deleted from the list and a more
acceptable product used.   Inclusion of a product on this list will
constitute a commitment to use said product(s) for the full term of
the contract.

The successful bidder(s) shall be given fifteen (15) calendar days to
submit all information.   Failure to meet this requirement may result
in your contract being terminated for default.   Contact the Florida
Department of Labor and Employment Security at the address listed
below for any related information packets:

        Toxic Substances Information Center
        2551 Executive Center
        Circle West
        Tallahassee, Florida 32301-5014
        Telephone: 1-800-367-4378

METROPOLITAN DADE COUNTY                    BID NO. 4545-1/97-OTR-CW

### SECTION 3.0 TECHNICAL SPECIFICATIONS

3.1  USAGE:

The Potassium Permanganate ($KMnO_4$) will be used at the Miami-Dade's Central District Wastewater Treatment Plant (Virginia Key) for application to sludge drying beds for controlling odors during sludge turning operations.

The $KMnO_4$ shall be stored in an 835 Ft.$^3$ silo, in the granular form. A solution make-up tank with a high rate agitator will be used to make up a 5% water solution. The solution will be stored in a 10,000 gal. tank, which will be used to fill 150 gal. containers installed on sludge turning machines, from which the product will be applied to the sludge.

The silo is equipped with a 4" thick disconnect to transfer the product from the supplier's container.

3.2  PRODUCT REQUIREMENTS:

The product shall be free of flowing grade and shall meet the most current American Waterworks Association (AWWA) Standard B-603. It shall be free from lumps and impurities, and dissolve readily into potable water without producing lumps or other detrimental characteristics. The material shall be of granular crystalline form.

The $KMnO_4$ shall have the following characteristics:

| | |
|---|---|
| Assay | 97%, minimum |
| Particle Size | Maximum of 7% shall pass through #75 U.S. Standard Sieve. Maximum of 20% shall be retained on #425 U. S. Standard Sieve. |
| Sulfate Content | 0.20%, Max. |
| Chlorine Content | 0.10%, Max. |
| Water Content | 0.50%, Max. |
| Insoluble Matter | 0.50%, Max. |
| Cadmium | 100 MG/KG, Max. |
| Chromium | 500 MG/KG, Max. |
| Mercury | 20 MG/KG, Max. |

3.3  VENDOR REQUIREMENTS:

The Vendor shall be required to provide on-site technical services including, but not limited to start-up services, testing, Potassium Permanganate handling, storage and safety training, and other such training as required, all free of charge. The service shall consist of two (2) separate visits, lasting three (3) days each. These visits shall be in addition to any other routine free services that the

METROPOLITAN DADE COUNTY     BID NO. 045-1/97-OTR-CW

supplier may make available to ensure proper use of its product in an efficient and safe manner.

The material shall be supplied in such bulk quantities that in any given shipment the supplier shall be able to refill the Silo with a quantity of between 40,000 to 50,000 lbs. It is estimated that delivery will be required every sixty days.

The transfer of the material shall be done in such way that no dust is created during transfer operations.

Transfer shall be done entirely by the supplier. The supplier shall also be responsible for any disposal of containers as may be necessary. The supplier shall submit Miami-Dade Water and Sewer with certified shipping manifests indicating the final disposal location of the containers.

The Vendor shall be capable of supplying a 5% $KMnO_4$ water solution, <u>if required</u>, and safely deliver it into the existing 10,000 gal. solution tank. The same requirements for the quality and proper delivery of the granular product shall apply to the diluted product. The solution tank is provided with a 4" fill connection which includes overfill containment.

The Vendor shall supply, with every shipment, a certified statement indicating that the product complies with all requirements of Section 3.2 of these Specifications. Additionally, certified weight statements shall be supplied with every shipment, indicating gross, tare and net weights. At the County's discretion, the Vendor's truck may be weighted a at scale located within the plant's premises.



BID NO. 4545-1/97-OTR-CW

## RETURN THREE COPIES
### UNLESS OTHERWISE SPECIFIED
### IN THIS INVITATION TO BID

OPENING: 1:00 P.M. Wednesd
DATE: June 15, 1994

CLERK OF THE BO
Metro Dade Cent
111 N.W. 1st Stre
Suite 2
Miami, Florida 331

INVITATION TO BID
SECTION 4.0  BID PROPOSAL FORMS

PLEASE QUOTE PRICES LESS TAXES, F.O.B. DESTINATION, DELIVERED IN DADE COUNTY, FLORIDA

NOTE: Dade County is Exempt From All Taxes (Federal, State, Local). Bid Price Should Be Less All Taxes. Tax Exemption Certificate Will Be Furnished By The County On Request

====================================================================

Date Issued: 05/17/94
Dade County Florida.

This Bid Proposal Consis of Pages 13 thru 15

====================================================================

Sealed bids, subject to the Terms and Conditions of this Invitation to Bid and accompanying Bid Proposal, such other contract provisions, specifications, drawings other data as are attached or incorporated by reference in the Bid Proposal will received at the office of the Clerk of the Board at the address shown above on behalf of Dade County Board of County Commissioners until the above stated time and date, and at t time publicly opened for furnishing the supplies or services described in accompanying Bid Proposal Requirement.

POTASSIUM PERMANGANATE IN GRANULAR FORM FOR USE IN WASTE WATER
TREATMENT BY WASAD FOR A TWO (2) YEAR PERIOD
(APPROX. JULY 1, 1994 THRU JUNE 30, 1996)
WITH COUNTY OPTION TO RENEW FOR ONE (1) ADDITIONAL YEAR.

A Bid Deposit in the amount of N/A of the total amount of the bid shall accompany all bids.

A Performance Bond in the amount of N/A of the total amount of the bid will required upon execution of the Contract by the successful bidder and Dade County.

| DO NOT WRITE IN THIS SPACE | |
|---|---|
| ACCEPTED ___ | |
| | REJECTED ___ |
| NON-RESPONSIVE ___ | |
| | NO BID ___ |
| DATE B.C.C. ___ | |
| ITEM NOS. ACCEPTED ___ | |
| COMMODITY CODE: 190-00 | |
| SPECIALIST: ABELIN RODRIGUEZ. CPPB/cmx/rl | |

FIRM NAME _Cason Entp Inc_

STREET ADDRESS _1090 N? ?ast_

CITY _Miami_

STATE & ZIP CODE _Fl 33_

TELEPHONE NUMBER _759-8900_

AUTHORIZED AGENT _Q. Cason_

TITLE OF OFFICER _Pres._

METROPOLITAN Ɗ. Ƒ COUNTY

BID NO. 4545-1/97-OTR-CW

# B I D   P R O P O S A L   F O R :

## BULK DELIVERY OF POTASSIUM PERMANGANATE

FIRM NAME: _CASON Enterprises Inc_

========================================================

| Item | Est. Quantity | Description | Unit Price | Total |
|------|---------------|-------------|------------|-------|

========================================================

1.    600,000 LBS.    Potassium Permanganate
                      As Specified                        $ _1.24⁹⁹_  $_____

Option A:

Potassium Permanganate in 5% water solution (min. 5,000 gal.
and max. of 10,000 gal. per shipment)      $ _198.⁹⁹_ /Gal

**EXHIBIT**

_B_

METROPOLITAN DADE COUNTY

BID NO. 4545-1/97-OTR-CW

B I D    P R O P O S A L    F O R :

BULK DELIVERY OF POTASSIUM PERMANGANATE

IMPORTANT NOTICE TO VENDORS:  FAILURE TO COMPLETE THIS SECTION MAY RESULT IN YOUR PROPOSAL BEING DECLARED NON-RESPONSIVE

<u>DRUG-FREE WORKPLACE PROGRAM</u> The under signed hereby certifies that this firm

     X      has a Drug Free Workplace Program
            does not have a Drug Free Workplace Program

<u>DRUG-FREE WORKPLACE AFFIDAVIT:</u>

In accordance with County Ordinance 92-15, all persons and entities that contract with the County are required to certify that they will maintain a drug-free workplace and requires such persons and entities to provide notice to employees and to impose sanctions for drug violations occurring in the workplace.  The Affidavit must be signed by an authorized agent of the company and notarized.

<u>FAMILY LEAVE POLICY QUALIFIER</u>

The undersigned hereby certifies that this firm has ____4____ number of employees for each working day during each of twenty (20) or more work weeks in the current or preceding calendar years, in accordance with Section 2.0, Para. 2.21.

==================================================================
IF NO BID PLEASE INDICATE REASON: (Per Section 1.0, Para 1.3c, General Conditions)
==================================================================
Prompt Payment Terms: __1/0__ % __10__ days net __30__ day
==================================================================
FID NO. of Bidder: 65032124/ (Bidders Federal Identification Number as used on Return.  Form 941.)  If none Bidders Social Security No. _____.
==================================================================
The undersigned Bidder certifies that this Bid Proposal is submitted in accordance with the Bid Specifications and Conditions governing this Bid, and that the Bidder will accept any awards made to him as a result of this bid.

FIRM NAME___Asavi Enterprises Inc___

STREET ADDRESS___1090 NE 79 St Ste 103 + 104A___

CITY,STATE,& ZIP CODE___Miami, Fl 33138___

TELEPHONE NUMBER_(305)_759-9900___ FAX NUMBER (305) 759-0492

AUTHORIZED SIGNATURE_____
          (Signature)                    (Print Name)            (Date)

TITLE OF OFFICER_____

State below mailing address (if other than above):
P.O. BOX___97121 Mia___  __Fl__  __33138__
         city                    state            zip code

# Purchase Order
## METROPOLITAN DADE COUNTY • MIAMI, FLORIDA
### Member, National Institute of Governmental Purchasing

**IMPORTANT:** THIS NUMBER MUST BE SHOWN ON ALL INVOICES, PACKAGES, CASES, TICKETS AND CORRESPONDENCE.

NO. 0015078

TO:
CASON ENTERPRISES, INC.
P.O. BOX 971211
MIAMI          FL 33197-1211

SHIP TO:
(500)  WATER & SEWER AUTHORITY
(M2)   MAIN OFFICE STOREROOM (MAINT.)
       CENTRAL DISTRICT WWTP
       VIRGINIA KEY, FL
       (305) 361-8086

INVOICE IN DUPLICATE TO:
WATER & SEWER AUTHORITY DEPT.
ATTN:  ACCOUNTS PAYABLE
P.O. BOX 330316
MIAMI, FL 33233-0316

Page  1      015947      650321297

THIS ORDER SUBJECT TO CONDITIONS ON FACE AND REVERSE THEREOF. NO CHANGES MAY BE MADE WITHOUT WRITTEN PERMISSION OF PURCHASING AGENT.

| DATE | REQUISITION NO. | DELIVERY DATE | SHIP VIA | F.O.B. | TERMS |
|------|-----------------|---------------|----------|--------|-------|
| 11/02/94 | 4-178848 | 11/01/94  10/31/96 | Best Way | Dest. | Net 30 |

| ITEM # | CODE | QUANTITY | UNIT | DESCRIPTION | UNIT PRICE | AMOUNT |
|--------|------|----------|------|-------------|------------|--------|
| 1 | 67500 | 1 | EA | PER BID NO.4545-1/97<br><br>THIS IS A BLANKET PURCHASE ORDER COVERING PERIOD FROM 11/1/94 - 10/31/96 DELIVERIES AGAINST THIS PURCHASE ORDER SHALL BE MADE IN QUANTITIES AND TIMES AS REQUESTED BY THE DEPARTMENT DURING SAID PERIOD.  INVOICING SHALL BE ON A PER ORDER (DELIVERY) BASIS OR ON A MONTHLY INVOICE BASIS.  ALL ITEMS IN ACCORDANCE WITH BID PROVISIONS AND SPECIFICATIONS.<br><br>THIS IS AN ESTIMATE ONLY; GUARANTEED PURCHASE MAY VARY AS REQUIREMENTS ARE ACTUALLY NEEDED.<br><br>GRANULAR POTASSIUM PERMANGANATE.<br><br>CONTACT: R. ABRAHANTE     (305) 665-7471 | 1499880.0000 | 1,499,880.00 |

All prices to be in strict accordance with Bid Proposal. Invoices subject to audit.

SMC / V. HOWARD

$1,499,880.00

PURCHASING AGENT

DADE COUNTY IS EXEMPT FROM FEDERAL EXCISE AND TRANSPORTATION TAXES AND STATE SALES TAX. DO NOT INCLUDE THESE TAXES IN YOUR INVOICE. EXEMPTION CERTIFICATE WILL BE SIGNED UPON REQUEST.

FEDERAL TAX EXEMPTION REGISTRATION NO. 59-73-0254K
FLORIDA SALES TAX EXEMPTION CERTIFICATE NO. 23-08-329851-53C

EXHIBIT

Fax Transmittal Me    7672

To: *Richard Cason*
Company: *Cason Enterprises*
Location:
Fax #: *759-0192*
Comments: *Richard*

From: *R. Ready*
Company: *Miami-Dade W&S*

Fax: *669-3753*

*Please check sign and return or retype on your letterhead*

*Bob Ready*

CASON ENTERPRISES, INC.
1090 N.W. 70 Street, #103
Miami, Florida 33138

May 25, 1995

Mr. Anthony J. Clemente, Director
Miami-Dade Water and Sewer Department
4200 Salzedo Street, 3rd Floor
Coral Gables, FL 33146

Re:   Bid Number 4545-1/97-OTR-CW; Potassium Permanganate

Dear Mr. Clemente:

This letter will serve as a release and settlement of all claims which Cason Enterprises, Inc. has or has had against the Miami-Dade Water and Sewer Department or Dade County with respect to the above referenced contract. This letter further confirms that the dispute between the parties concerning the obligation of Cason Enterprises, Inc. to provide and the obligation of Dade County to purchase potassium permanganate has been resolved. In consideration of Dade County agreeing to purchase 10,000 gallons of 5% potassium permanganate (KMnO₄) solution and 10,500 pounds of dry, free-flowing potassium permanganate for a total cost of $149,900.00, Cason Enterprises, Inc. hereby releases and forever discharges, acquits and forgives Dade County, Miami-Dade Water and Sewer Department, their employees, agents, representatives and successors and assigns of and from all manner of claims, demands and causes of action which Cason Enterprises, Inc. has or may have against Dade County or Miami-Dade Water and Sewer Department to date arising out of or related to Contract No. 4545-1/97-OTR-CW concerning the purchase of potassium permanganate.

Sincerely yours,

Richard Cason
President



EXHIBIT
D